UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EMIL URSCHELER,

    Plaintiff,

v.                                         Case No: 8:16-cv-224-T-27-TBM

ADVENTIST HEALTH SYSTEM
SUNBELT HEALTHCARE CORP.
and THE HARTFORD LIFE AND
ACCIDENT INSURANCE COMPANY,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Defendant Hartford Life and Accident Insurance Company's ("Hartford") Motion to Dismiss Counts II and III (Dkt. 15) and Defendant Adventist Health System Sunbelt Healthcare Corp.'s ("Adventist") Motion to Dismiss Counts II, III, and IV or, in the alternative, Motion for a More Definitive Statement (Dkt. 16). Plaintiff opposes both motions (Dkt. 26, 27). Upon consideration, Hartford's Motion is **GRANTED**. Adventist's Motion is **GRANTED** *in part* and **DENIED** *in part.*

### BACKGROUND

Plaintiff's wife participated in an employee benefit plan sponsored by Adventist and underwritten by Hartford. (Dkt. 1 ¶¶ 7, 10). Under the plan, she received life insurance coverage through a group policy. (*Id.* ¶ 7). Plaintiff was the named beneficiary on her policy. The policy provides that group coverage terminates when a participant's employment ends, (*id.* ¶ 74), and in the event that group coverage terminates, individuals may convert the policy into an individual policy.

1

(*Id.* ¶ 71). To convert the policy, the participant, "must, within 31 days of the date group coverage terminates, make written application to [Hartford] and pay the premium." (*Id.* ¶¶ 76-77). After his wife's death in February 2014, Plaintiff's claim for benefits under the policy was denied based on her failure to convert her group coverage to an individual policy following her termination from employment. (*Id.* ¶¶ 34-35, 40).

While traveling in Pennsylvania in December 2012, Ms. Urscheler was diagnosed with stomach cancer. (*Id.* ¶¶ 12-13). She informed Adventist that she would be staying in Pennsylvania for treatment. (*Id.* ¶¶ 16-17). In February 2013, she communicated with Adventist's Human Resources Department who led her to believe that her "job was still waiting for her when she improved" and, excluding healthcare benefits, that "all other employee benefits would remain active." (*Id.* ¶¶ 18-21). Notwithstanding, Adventist terminated her on June 23, 2013. (*Id.* ¶ 24).

Adventist claims to have sent notice of employment termination and paperwork regarding the conversion of Ms. Urscheler's group policy to her Florida address, even though it knew she was in Pennsylvania at a known address. (*Id.* ¶¶ 26, 29, 32). As a result, Plaintiff alleges that Ms. Urscheler was "denied the opportunity to properly convert her benefits due to that lack of notification." (*Id.* ¶ 100).

Since Ms. Urscheler failed to convert her policy, Plaintiff was denied $288,160 in life insurance benefits by Hartford. (*Id.* ¶ 99). Plaintiff seeks relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132, (*id.* ¶ 1), asserting that the benefits would have been properly payable but for the misrepresentations and failure to provide proper notice by Adventist and/or Hartford. (*Id.* ¶¶ 66-67, 86-87, 104-105).

2

## STANDARD

A complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This does not require detailed factual allegations but demands more than an unadorned, conclusory allegations of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, the complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And "[t]he complaint must contain enough facts to make a claim for relief plausible on its face." *Resnick*, 693 F.3d at 1324-25. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Finally, all factual allegations in the complaint must be accepted as true for purposes of a motion to dismiss, but this is "inapplicable to legal conclusions." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

## DISCUSSION

In his response, Plaintiff voluntarily dismisses Count I. (Dkt. 27 at 6) In the remaining counts, Plaintiff seeks equitable relief under 29 U.S.C. § 1132(a)(3). (Dkt. 1 ¶¶ 62, 96). This subsection authorizes entry of "appropriate equitable relief," which has been interpreted as "those categories of relief that were *typically* available in equity." *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547

3

U.S. 356, 361 (2006). As such, reformation, estoppel, and surcharge are available remedies. *CIGNA Corp. v. Amara*, 563 U.S. 421, 440-443 (2011).

### *Equitable Reformation (Count II)*

In Count II, Plaintiff seeks equitable reformation of the life insurance contract to avoid the enforcement of "ill-defined Plan terms regarding the conversion option." (Dkt. 26 at 7). Hartford and Adventist move to dismiss Count II, contending that Plaintiff fails to allege the elements of equitable reformation. (Dkt. 16 at 10; Dkt. 15 at 6).

Reformation serves to "effectuate mutual intent at the time of contracting." *Amara*, 563 U.S. at 450 (Scalia, J., concurring in judgment). Equitable reformation is granted only in limited circumstances. *See Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 8 F.3d 760, 765 (11th Cir. 1993) (noting the "presumption against reformation"). To plead a cause of action for reformation, a plaintiff must first allege that the contract does not accurately reflect the parties' agreement because of fraud, inequitable conduct, accident, inadvertence, or mutual mistake in the drafting of the contract. *Dawley v. NF Energy Sav. Corp. of America*, 374 Fed. App'x 921, 924 (11th Cir. 2010).

With respect to Hartford, the allegations in Count II do not assert fraud, inequitable conduct, accident, inadvertence, or mutual mistake in the origination of the plan. (*See* Dkt. 1 ¶¶ 1-53, 61-69). With respect to Adventist, the allegations likewise do not make any reference to the plan and its failure to express the parties' agreement. (*See* Dkt. 1 ¶¶ 1-53, 61-69). Plaintiff's allegations are

4

therefore insufficient to state a claim for equitable reformation and the motions to dismiss will be granted as to Count II.[1]

### *Equitable Estoppel (Count III)*[2]

In Count III, Plaintiff pleads equitable estoppel based on Adventist's misrepresentations concerning the status of Ms. Urscheler's employment and benefits.[3] (Dkt. 26 at 9). Hartford and Adventist move to dismiss Count III, contending that Plaintiff fails to allege that the actions of either constituted an interpretation of any alleged ambiguity in the Plan. (Dkt. 15 at 7-8; Dkt. 16 at 12).

In this Circuit, when equitable estoppel is applied in the ERISA context, a plaintiff must demonstrate that the provisions of the plan are ambiguous and that representations interpreting those provisions were made. *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994); *Kobold v. Aetna U.S. Healthcare, Inc.*, 258 F. Supp. 2d 1317, 1322 (M.D. Fla. 2003) ("Absent both an ambiguous provision and an oral representation interpreting that ambiguous provision, equitable estoppel may not be asserted under ERISA."). Ambiguous provisions are those that "reasonable persons could disagree as to their meaning and effect." *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285

---

[1] Count II also makes reference to equitable tolling, "a form of extraordinary relief that courts have extended only sparingly." *Bhd. Of Locomotive Eng'rs & Trainmen v. CSX Transp., Inc.*, 522 F.3d 1190, 1197 (11th Cir. 2008). To the extent Plaintiff seeks some form of equitable tolling related to any conversion documents, (Dkt. 1 ¶ 66), where, as here, there is no allegation of intentional concealment that made it difficult or impossible to learn about the limitations period in the policy, there can be no equitable tolling. *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 846-47 (11th Cir. 2013). Ms. Urscheler's policy unambiguously states that to convert life insurance, the participant "must, within 31 days of the date group coverage terminates, make written application to [Hartford] and pay the premium." (Dkt. 1 ¶¶ 76-77).

[2] The claim for equitable estoppel is labeled "Count II" in the Complaint, but this claim is obviously a separate and distinct count. (Dkt. 1, pg. 12).

[3] Since ERISA does not include a body of contract law to govern disputes over ERISA-regulated plans, claims involving the interpretation and enforcement of employee benefit plans are brought under federal common law. *Hauser v. Life Gen. Sec. Ins. Co.*, 56 F.3d 1330, 1333 (11th Cir. 1995).

(11th Cir. 1990). And, a showing of detrimental reliance is required before equitable estoppel is applied under § 1132 (a)(3). *Amara*, 563 U.S. at 443.

Plaintiff alleges "[t]he Plan is ambiguous with regard to what is a 'written application,'" (Dkt. 1 ¶ 78), and that "[w]ithout notice of termination, the Plan is ambiguous with regard to whether the conversion privilege is actually triggered." (Dkt. ¶ 81). But Plaintiff does not allege Adventist or Hartford made any representations interpreting those specific provisions. Rather, Plaintiff alleges that based on her discussion with Adventist's Human Resource Department, "Norma Urscheler understood that her life insurance benefits were still active." (Dkt. 1 ¶¶ 18, 87). Notwithstanding, the specific provisions of the Plan regarding extension of coverage are unambiguous. The Plan provides:

> "If You are absent from work due to sickness or injury, all of Your coverages . . . may be continued until the last day of a period of 12 month(s) which begins on the date You were first absent from work as an Active Full-time or Part-time Employee." (*See* Dkt. 1, exhibit A at 24).
>
> . . .
>
> "If You are absent from work as an Active Full-time or Part-time Employee, Your insurance may be continued up to the maximum period of time stated. *In each instance, such continuation shall be at the Employer's option.*"

(*Id.* at 23) (emphasis added)

Indeed, Plaintiff understands the Plan to mean that "ADVENTIST has discretion to determine whose insurance it continues and for how long, during a leave of absence," (Dkt. 1 ¶ 91). Reasonable persons would therefore not disagree as to the Plan's "meaning and effect," regardless of the discretion conferred on Adventist. Plaintiff has therefore not sufficiently alleged that a representation made by Adventist was an interpretation of a specific ambiguous provision, particularly the

provisions Plaintiff contends are ambiguous. Additionally, with respect to the requirement of detrimental reliance, the allegation that "Norma Urscheler detrimentally relied upon this representation" (Dkt. 1 ¶ 88) is conclusory. *Twombly*, 550 U.S. at 555.

Finally, Plaintiff alleges no representations by Hartford claimed to have been an interpretation of an ambiguous provision of the Plany. *Kobold* is therefore instructive and Hartford's Motion to Dismiss Count III will be granted.

### *Surcharge against Adventist (Count IV)*[4]

In Count IV, Plaintiff pleads an action for surcharge to remedy Adventist's alleged breach of fiduciary duty. (Dkt. 26 at 11). Adventist contends that the allegations are vague and fail to identify the specific conduct that constitutes a fiduciary breach. (Dkt. 16 at 14).

Generally, the remedy of surcharge is utilized to provide monetary compensation for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. *Amara*, 563 at 441. Surcharge is an available remedy in this case because ERISA treats a plan's fiduciary as a trustee. *Id.* at 439. To establish a beach of fiduciary duty under an ERISA provision, a plaintiff must show that the defendant is a fiduciary with respect to the plan. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005). ERISA provides that:

> a person is a fiduciary with respect to the plan to the extent (i) he exercise any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any

---

[4] The claim for Surcharge is labeled as Count III in the Complaint, but the claim is really the fourth and final count. (Dkt. 1, pg. 15).

authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Accepting the well-pleaded factual allegations of the Complaint as true, Adventist is a fiduciary with respect to the Plan through its discretionary authority and control concerning plan benefits. (Dkt. 1 ¶¶ 18, 26, 102-103). This Circuit recognizes that an ERISA fiduciary may be liable for withholding information from a plan participant. *See Jones v. Am. Gen. Life. & Accident Ins. Co.*, 370 F.3d 1065, 1072 (11th Cir. 2004) ("[A]n ERISA plan administrator's withholding of information may give rise to a cause of action for breach of fiduciary duty"); *Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1016 n.10 (11th Cir. 2003) (recognizing that an ERISA participant has a right to accurate information and that an ERISA plan administrator's withholding of information may give rise to a cause of action for breach of fiduciary duty).[5] In addition to fiduciary status and a breach of duty, a plaintiff must also prove actual harm before "a fiduciary can be surcharged under § [1132](a)(3)." *Amara*, 563 U.S. at 444 (noting that harm could be detrimental reliance, loss of a protected right under ERISA, or "its trust-law antecedents").

Plaintiff's allegations that Adventist failed to supply necessary information regarding the conversion of Ms. Urscheler's benefits are sufficient, that is, facially plausible, to support her claim of breach of fiduciary duty. (Dkt. 1 ¶¶ 24, 26. 32, 104-105). It can be reasonably inferred that Adventist's failure to provide the proper information for converting the policy resulted in actual harm to Ms. Urscheler, who relied to her detriment on the representation that her job and benefits

---

[5] "Our sister circuits have reached the same conclusion, consistently holding that ERISA plan participants may state a cause of action for breach of fiduciary duty based on a plan administrator's material misrepresentations or omissions." *Jones*, 370 F.3d at 1072.

8

were still active. (Dkt. 1 ¶¶ 19-21, 31, 44, 99-101, 104-105, 108, 110). Count IV will therefore not be dismissed.

Accordingly, Hartford's Motion to Dismiss Counts II and III, (Dkt. 15), is **GRANTED** and Adventist's Motion to Dismiss Counts II, III, and IV, (Dkt. 16), is **GRANTED** *in part* and **DENIED** *in part*. Counts II and III are **DISMISSED** *without prejudice*. Plaintiff is **GRANTED** leave to file an Amended Complaint within **fourteen (14) days**.

**DONE AND ORDERED** this 7th day of July, 2016.

**JAMES D. WHITTEMORE**
**United States District Judge**